## LANDRÓN ET AL. *v*. NAVEDO.

Apelación procedente de la Corte de Distrito de San Juan.

No. 102.—Resuelto en abril 12, 1907.

TESTAMENTO POR COMISARIO—TÉRMINO PARA OTORGARLO.—El término que para hacer testamento señala al comisario la Ley 33 de Toro, ha de computarse desde la muerte del mandante ó testador, pues mientras ésta no ocurre el comisario no adquiere derecho alguno por virtud del poder para testar.

ID.—EFICACIA DEL PODER COMO TESTAMENTO.—En los casos en que el poder para testar no pudiera surtir efecto *como tal poder*, puede, no obtante, ser *eficaz como testamento*, en todo aquello que constituya una expresión de la voluntad del testador, como ocurre en el caso de autos, en que el testador, instituye en

el poder, á su esposa, como heredera universal, á falta de ascendientes.   Esta institución es válida, aun en el caso de que el poder fuera nulo como tal.

ID.—PODERES OTORGADOS BAJO EL RÉGIMEN DE LA ANTIGUA LEGISLACIÓN.—Los poderes para testar, otorgados, bajo el régimen de la antigua legislación, tienen fuerza y validez por virtud de la regla segunda de las disposiciones transitorias del Código Civil.   .

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Texidor.*

Abogado del apelado: *Sr. Alvarez Nava.*

EL JUEZ ASOCIADO SR. WOLF emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia de la Corte de Distrito de San Juan.   Los hechos están expresados ampliamente en la resolución de la corte inferior, que es como sigue:

''Este pleito fué llamado para vista en corte por su orden de calendario, comparecieron los abogados de las partes, proponiendo prueba documental que fué admitida y argumentado oralmente el caso.

''En la opinión de esta corte que sirvió de fundamento para su decisión sobre la excepción opuesta á la demanda por no aducir hechos bastantes para determinar una causa de acción, se expuso que la excepción no procedía, porque en la demanda no había alegación alguna respecto á que la demandada tuviera concedido un término tan largo como hasta 1894 para otorgar el testamento por comisario que le confirió su esposo en 1866.   Pero ahora llegamos al juicio; hay defensas de la demandada y está la prueba para el exámen en la corte.

''De las alegaciones y pruebas resulta que en 1866 Don Manuel Náter Marrero y su esposa la demandada Doña Inés Navedo y Dávila otorgaron ante notario público poder por el que se facultaban recíprocamente para que el que de ellos sobreviviese, formalizase dentro ó fuera del término legal testamento por el otro, haciendo los legados que le pareciese; que el sobreviviente se nombrase albacea con facultades para ejercer el cargo de contador partidor y elegir persona de su confianza que lo represente.   Instituyeron por sus únicos y universales herederos á sus respectivas madres, instituyéndose en defecto de ellas y en segundo lugar como herederos universales.

''En virtud de tal poder y habiendo muerto Don Manuel Náter Marrero en 16 de abril de 1894, en mayo del mismo año, otorgó por él su testamento en que se instituyó por heredera y se nombró albacea contadora partidora é hizo varios legados, pidiéndose hoy la nulidad de

todo y que se abra la sucesión entre los hermanos y sobrinos de Don Manuel Náter, toda vez que le había premuerto la madre, y carecía de descendientes y ascendientes.

"Las leyes de Toro, vigentes cuando el poder se otorgó, habían fijado los términos de 4, 6, y 12 meses para que el comisario otorgase el testamento de su mandante, y entiende la corte que ese término ha de empezar á contarse desde que el poder se confirió; pero como esos términos fueron establecidos única y exclusivamente en beneficio de los mandantes, según sentencia de 19 de setiembre de 1863 del Tribunal Supremo, es claro que éstos pueden denunciarlos y conceder á los comisarios todo el tiempo que les parezca conveniente. Y del poder para testar de Don Manuel Náter resulta, que no sólo quiso que fuese otorgado después de su muerte, por lo que implícitamente renunciaba á los términos de ley, sino que expresamente confirió á su esposa todo el tiempo que ella creyese conveniente, ya que le decía que otorgara el testamento dentro ó fuera del término legal. Así, pues, el haber otorgado el dicho testamento después del año de otorgado el poder, no le hace nulo ni ineficaz, porque para ello estaba facultada Doña Inés Navedo.

"Por otra parte y aún en el supuesto inexacto de que fuera nulo, siempre habría que tener como testamento la voluntad expresada por Don Manuel Náter sobre institución de heredera única á favor de su esposa, en defecto de ascendiente.

"Y no importa que la muerte del Señor Náter ocurriese y el testamento por poder se otorgase en 1894, cuando ya regía el Código Civil que suprimió esa manera de testar, porque la disposición segunda transitoria reconoció valor á los testamentos mancomunados, poderes para testar y á las memorias testamentarias otorgados ó escritos antes de regir el Código, con la sola condición de que la revocación de esos actos ó de cualquiera de sus cláusulas no podrán verificarse, sino testando, con arreglo al Código. Por consiguiente, otorgado el poder de Don Manuel Náter antes de regir el Código y no modificado áquél tenían valor legal y, en consecuencia, podía Doña Inés Navedo autorizar el testamento que era consecuencia del reconocimiento de validez al poder.

"Por las razones expuestas, la corte decide que los hechos y el derecho están en favor de la parte demandada, quien tiene derecho á una sentencia que declare sin lugar todas las pretensiones de los demandantes á quienes se imponen las costas, librandose para el cobro de éstas, orden de ejecución al marshal y el secretario anotará en sus libros un fallo de acuerdo con esta decisión.

"Pronunciada en corte abierta el 30 de Noviembre de 1906.

"Pedro de Aldrey, Juez de la sección 1a.

"Registrada hoy día 1o. de diciembre de 1906.—Certifico.—José E. Figueras, Secretario".

La Ley 33 de Toro, á la cual se ha hecho referencia es como sigue:

"El comisario, para hacer testamento ó mandas, ó para declarar por virtud del poder que tiene lo que ha de facer de los bienes del testador, no tenga más término de cuatro meses, si estaba al tiempo que se le dió el poder en la ciudad ó villa ó lugar donde se le dió el poder, y si al dicho tiempo estaba ausente, pero dentro de estos nuestros reinos, no tenga ni dure su poder más de seis meses, é si estuviera fuera de los dichos reinos al tiempo tenga término de un año é no más. É pasados los dichos términos no pueda más hacer que si el poder no le fuere dado. Pero lo que el testador le mandó señalada é determinadamente señalando la persona del heredero, ó señalando cierta cosa que había de hacer el tal comisario, mandamos que en tal caso el comisario sea obligado á lo facer; y si pasado dicho término no lo ficiere, que sea habido como si el tal comisario lo ficiese ó declarase."

Como puede verse, la corte inferior fué de opinión de que el tiempo en que el comisario había de otorgar el testamento con arreglo á las Leyes de Toro, debía computarse desde la época en que el poder se confirió. No participamos de esa opinión. Parece evidente que no hay derecho alguno de parte del comisario para cumplir lo dispuesto en el poder hasta que el otorgante del mismo haya muerto. A este objeto parecen hacer referencia las opiniones de varios comentaristas de las Leyes de Toro; á saber, Don Pedro Nolasco de Llano, Sr. González y Serrano, Don Benito Gutiérrez Fernández, y probablemente otros. Y el hecho de que la Corte Suprema de España haya considerado varios casos de Poderes como el presente, en los que el testamento se hizo después de la muerte del otorgante sin que se haya discutido la validez de los testamentos así hechos, merece especial consideración. El mismo texto de la Ley de Toro al hablar de lo que debe hacerse con los bienes del testador, indica que el legislador pensó

en una época posterior á la del fallecimiento del otorgante; en otras palabras, de lo que haría el comisario entonces con los bienes, siendo dicho comisario la única persona autorizada para disponer de los mismos. El concepto de testador generalmente se refiere á una persona que ha muerto. De igual modo las limitaciones de 4, 6 y 12 meses, respectivamente, cuando el comisario se encuentra en la ciudad, en el territorio ó fuera de él, muestran que el legislador tuvo presente un accidente imprevisto como la muerte, más bien que el especificado por medio del otorgamiento del poder. Además, la Ley 38 de Toro prescribe:

"Cuando el testador dejare dos ó más comisarios, si alguno ó algunos de ellos requeridos no quisieren ó no pudieren usar del dicho poder ó se muriesen, el poder quede por entero al otro, ó otros que quisieren ó pudieren usar del dicho poder."

La palabra "dejare" en el original implica que el testador *deja* comisarios y puede *dejarlos* únicamente después de su muerte. De una lectura general de la ley se ve claramente que el tiempo debe empezar á correr desde la muerte del testador. Siendo ésta la opinión de la corte, es innecesario el considerar si el testador pudo prorrogar el término dentro del cual había de ejercer sus funciones el comisario.

Estamos de acuerdo con la corte inferior con respecto á que en el caso de que el poder fuera ineficaz como tal poder, sin embargo, dicho poder prevalecería como testamento, puesto que en el mismo se instituye á la esposa como heredera universal si no hubiera ascendientes. De igual modo convenimos con la corte inferior en que la disposición transitoria segunda del Código Civil deja en vigor el poder otorgado con arreglo á la legislación antigua.

Por las razones expresadas debe confirmarse la sentencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y MacLeary.